ORIGINAL
Case 2:03-cv-00004-RWS   Document 1   Filed 01/07/03   Page 1 of 8
FILED IN CLERK'S OFFICE
U.S.D.C. Gainesville
JAN 0 6 2003
LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

In The United States District Court
~~thern District~~
Georgia

Warren R. Skillern   EF 327912

v.

Ken Padgett; Robert Paris;
Unknown Deputy; Cathy Carter;
Rebecca Tierce aka Paris;
Cecelia Harris; John Valente;
Wallace Rogers; Kristvie
Valente

Criminal Action for
Civil Rights Violations

18 USC § 242

2:03-CV-0004-RWS
Case no _____

## I. Prelude Motion

a) Skillern moves to dismiss any other 18 USC § 242 actions filed in regards to above defendants to be replaced with this action.

b) With exceptions to civil actions 42 USC § 1983 02:02-CV-106 RWS; and 42 USC § 1983 Warren Skillern v Cathy Carter, et al[1]; and 42 USC § 1983 02:02-CV-065 its motion for reconsideration; and Original Jurisdiction Habeas Action 02:02-CV-0161 RWS; and Appealability of judgement as to constitutional question, habeas action 02:02-CV-0030, Skillern motions to dismiss any other actions, 42 USC § 1983 and habeas filed prior CV-065's reconsideration

## II.

Comes now Warren Skillern, a Georgia State prisoner lodged at Georgia State prison, 100 Ga. Hwy 147, Reidsville Ga 30499-9701, and Complainant in above styled action, charging that above named defendants Ken Padgett, City of Calhoun Georgia Detective; Robert Paris, Gordon County Georgia Detective; Unknown Deputy, Gordon County Jail; Cathy Carter, City of Canton Georgia Detective;

---

[1] case number unknown

- 1 -

Rebecca Tierce aka Rebecca Paris, assistant district attorney Gordon County Georgia; Cecelia Harris, assistant district attorney Cherokee County Georgia; Kristine and John Valente and Wallace Rogers[2] private attorneys, trial and appellate respectively, did join and fraudulently procured convictions depriving Skillern of due process rights to be free from Fourth Amendment violations of his person and property, and effective assistance of counsel, blatant violations under color of law willfully executed, 18 USC § 242, punishable by fine or imprisonment or both, and tenders the following facts:

III. A) Gordon County

1) Padgett and Paris, detectives, the arresting officers, and Tierce, the assistant district attorney, kepted Skillern imprisoned[3] after a magistrate determined Skillern had been falsely arrested and jailed, this knowledge known to Valantes, Skillern's attorneys.

2) Skillern still imprisoned, Tierce withdrew the infirm warrant and an unknown deputy procurred a warrant charging Skillern with bribary, this warrant too would be withdrawn, this knowledge known to Valentes as well, yet Skillern remained imprisoned.

3) Paris and Tierce, aka Paris, some two weeks later, while Skillern still imprisoned, indicted him for the charges that he had initially been falsely arrested and jailed, Valentes well aware of this yet stood silent.

---

[2] now works as an assistant district attorney Cherokee County Georgia
[3] which brings to question kidnapping, see 18 USC § 242 text

- 2 -

4) Several months passed, Skillern unable to bail due to said bribary charge, and Valentes relentlessly pressed Skillern to plead guilty; Skillern refused until he was assaulted by an agent of Parris, threatened with death should he fail to plead guilty at his upcoming trial. Though Valentes knew of the assault that hospitalized his client and that Skillern had been falsely indicted he stood with Skillern as he pled guilty on the day of his trial.

B) Cherokee County

1) Carter, detective, soon after said Gordon County magistrate ordered Skillern's release and without any investigation procured several felony arrest warrants, arrested Skillern acquiring jurisdiction over his person and refused his demands for a committal hearing. Valentes well aware of this second illegal imprisonment yet did nothing to intervene.

2) One felony charge would not be indicted yet to date remains levied; two felony charges Skillern would be found not guilty of since there was no evidence prosecuted; one felony charge would ultimately be dismissed without qualification nor explanation; and as to convictions they were fraudulently procured, to wit: - FRCP 9(b) -

During the trial Valentes and Harris, prosecutor, reached a common goal in concert:

a) each beguiled the trial judge to permit a "defense" designed to effectively convict Skillern;

b) each elicited from ~~the~~ witnesses incomplete testimony

-3-

complementary of each others examinations that spun false appearence of evidence incriminatory and prejudicial to Skillern;

c) Harris presented and Valentes complemented her presentation of an alleged statement of guilt when in fact Skillern gave no statement;

d) When Skillern asked Valentes about exculpatory evidence that indicated Skillern had been falsely accused Valentes asked Harris about it in the presence of the trial judge and She said she was unaware of it — Skillern would later learn not only was Harris aware of it she had subpoenaed it, and also that Valente had possesion of this evidence and knew the state had subpoenaed it. This evidence so remarkable it would have ended the trial in Skillern's favor;

e) Valentes consorted with Harris who proffered as incriminatory a common household item purportedly found by Detective Paris during an illegal search of illegally seized property (a Corvette and pilot flight bags) — said Forth Amendment violation not challenged by Valente despite he knew Said item did not belong to Skillern.

f) <u>Post trial</u>, a four year protraction, Rogers, who now works with Harris, met with Valentes prior to examining him at a new trial hearing and devised a scheme to efface the reprehensible trial conduct of both Valente and Harris. — Skillern has tangible evidence of this meeting — rendering Skillern's day in Court, again, to a meaningless ritual:

    1- As Harris looked on, Rogers and John Valentes skillfully infused events in Gordon County with events in Cherokee County making a chimera to mislead the Court to believe that Skillern's defense

-4-

was that indeed the prosecutrix was telling the truth but that others had perpetrated the crimes; that Skillern wanted Valente to prosecute this (chimera) defense.

2- Rogers and Valente, as Harris looked on — Harris would not examine Valente nor Skillern — skillfully transfigured[4] said exculpatory evidence in to something it was not and as evidence that the judge ruled impermissible — when in fact the judge never saw it.

3- On direct appeal Harris and Rogers complemented each others' briefs with false assertions and facts not found in the record of the trial to include one **remarkable one**, that Skillern testified to the jury that indeed the prosecutrix told the truth but that others perpetrated the crimes, when in fact Skillern made no such testimony.

> have been quite impossible to blame others since in fact the record is devoid of any evidence of any third party for good reason, no one ever said, reported or alluded to others even having been in proximity of the alleged incident!
>
> **note:** this third party figment's incunabula began at said beguilement, see p. 3 B(2)(a), developed during post-trial its adolescence, and matured into adulthood on direct appeal; and hopefully now meets its moribund and demise herein. So Skillern modifies "no one ever said, reported or alluded to others" to the extent Valente, Harris, and Rogers did.

---

[4] post conviction Rogers would do this again

## IV Summary

These acts outlined above nothing short of fraud, misleading and criminal willful conduct and abject indifference to federal rights guaranteed to Skillern under the United States Constitution, every conceivable one there is.

Valentes and Rogers, private attorneys notwithstanding, did explicitly join with the State to secure and keep secured fraudulently procured convictions: but for complicity with the State what lawyer too include a moron would have his client plead guilty to crimes even the State admits don't exist; what lawyers but ones bent with the State to secure and preserve convictions would, even if true, allude in open court that their client admitted guilt; what lawyer but perhaps a moron and/or compliant with the State would leave hanging in the wind felony charges not indicted and remanded for new trial, the former still hanging, the latter finally dismissed, albeit with no explanation, due to their client's hard work pro se?

Not one act described above was beyond the State's purview. But for said meeting between Valente, who had obviously joined with the State, and Rogers, Skillern cannot say the lawyers had a cup of tea and discussed how to deprive Skillern of his rights. But its painfully obvious that each act could not sustain without the State's assistance and acquiescence to known falsehoods, ie, Harris very well knew Skillern made no statement to the police; made no statement to the jury that others were to blame; Harris knew very well there was no third party and that Skillern never said the prosecutrix's claims were true. And so do the Valentes and Rogers — its right there in the record

- 6 -

IV. <u>Heck v Humphrey</u> Discussion.

Aside from matters that supports this criminal action, convictions for crimes that don't exist, arrests for crimes not indicted, and some that rendered acquittals, and others withdrawn and/or dismissed as baseless, though all were/are baseless, remaining convictions too include those for crimes that don't exist would not be affected by <u>Heck</u> since they were fraudulently procurred, which quite frankly gives this Court original jurisdiction since the State of Georgia cannot have jurisdiction under these circumstances, in particular, at the moment the Gordon County Magistrate ordered Skillern's release which Padgett, Paris, Tierce, and Valerie ignored. That is to say Gordon County was out cold and all that transpired in said finding by the Gordon magistrate that Skillern had been falsely arrested, alleged statements and purported finding of evidence, even if true verities of guilt, killed what ever case Cherokee County may have had since Skillern was illegally imprisoned, and killed therein also any case Gordon County could muster whether viable or trumped.

V. Skillern moves to prosecute this matter and/or if required the matter be turned over to the U.S. Department of Justice.

Skillern also states that he has provided a courtesy copy of this to the State Attorney Generals Office.

VI Relief: to be determined by this Court

-7-

VII. Declaration

I, Warren Skillern, complainant in above styled action, do hereby swear under the penalty of perjury that the foregoing information is true and accurate.

Signed: /s/ Dec 29, 2002
Warren Skillern  pro se

VIII  Should the following be necessary and required Skillern provides:

### Affidavit To Proceed In Forma Pauperis

I, Warren Skillern, depose and say that I am the plaintiff/complainant in the above styled case; that in support of my request to proceed without being required to prepay fees, costs or give security therefore, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefore; that I believe I am entitled to redress.

### Authorization For Account Withdrawal

In the case of Warren Skillern v Ken Padgett, et.al., I, Warren Skillern, hereby authorize my custodian and his/her designee to withdraw funds from my inmate account and to transmit the same to the Clerk, U.S. District Court, to be applied to the filing fee which I am required to pay in connection with this case. This authorization shall apply to any institute in which I am or may be confined. — Executed this 29th day of December 2002

Signed: /s/
Warren Skillern  pro se